## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | |
|---|---|
| SUSAN CRISP, ASHLEY SACCHITELLA, and CATHERINE WEEKS, on behalf of themselves and all others similarly situated,<br><br>          Plaintiffs,<br><br>v.<br><br>COMENITY CAPITAL BANK; COMENITY SERVICING, LLC; and BREAD FINANCIAL HOLDINGS, INCORPORATED,<br><br>          Defendants. | Case No.:<br><br>**CLASS ACTION**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiffs Susan Crisp, Ashley Sacchitella, and Catherine Weeks ("Plaintiffs"), individually, and on behalf of all others similarly situated, by and through counsel, bring this action against Comenity Capital Bank and Comenity Servicing, LLC (collectively, "Comenity" or "Comenity Bank"), Bread Financial Holdings, Incorporated ("Bread Financial"; all three defendants shall collectively be referred to as "Defendants") and allege the following based on personal knowledge as to their own facts, and upon information and belief and the investigation of counsel as to all other matters.

1

## INTRODUCTION

1.     This action is brought by Plaintiffs, individually and on behalf of a class of similarly situated holders of Comenity credit cards, issued and serviced through Defendants Comenity Capital Bank and Bread Financial.  This action arises from a disruption in services for credit card account holders resulting from Defendants' system outage. Plaintiffs seek damages and injunctive relief based upon the unlawful conduct of Defendants in denying such account holders the ability to access their accounts, use their credit cards to purchase essential household items, or make timely payments on their accounts, subjecting them to late fees.

2.     As a result of Defendants' conduct, Plaintiffs and Class members have been prevented from accessing their accounts to purchase items as basic as food and clothing and to make timely payments for household amenities. Through charging late fees on accounts that Plaintiffs and the class cannot even access to make payments, Defendants have converted monies for their own use. Upon information and belief, Class Members have or will incur unreimbursed late fees as a result of the failure to make timely payments using their inaccessible accounts.

3.     As a result of Defendants' negligence, and unfair and unlawful conduct, Defendants have negatively impacted Plaintiffs' credit scores, credit histories, and credit worthiness by preventing Plaintiffs' ability to make timely credit card payments.

4.     Plaintiffs and Class members seek damages, exemplary and punitive damages where appropriate and allowed, and an injunction enjoining the continuation of Defendants' unlawful conduct, restitution and disgorgement.

## THE PARTIES

**A.     Plaintiffs**

5.     Plaintiff Susan Crisp is a citizen and resident of Tennessee.

6.     Plaintiff Ashley Sacchitella is a citizen and resident of California.

7.     Plaintiff Catherine Weeks is a citizen and resident of Utah.

2

**B.** **Defendants**

8.     Defendant Comenity Capital Bank is a Utah corporation with its headquarters in Draper, Utah.

9.     Defendant Comenity Servicing LLC is a Texas corporation with its principal place of business in Columbus, Ohio.

10.     Defendant Bread Financial Holdings, Inc. ("Bread Financial") is a Delaware corporation with its headquarters in Columbus, Ohio. It was formerly known as Alliance Data Systems Corporation and changed its name to Bread Financial Holdings, Inc. in March 2022.

11.     Whenever reference is made to any act of Defendants in this Complaint, or other corporate Defendant as may be named in the future, the allegation shall be deemed to mean that the officers, directors, agents, representatives, subsidiaries, affiliates and employees of Defendants did or authorized the act while actively engaged in the management, direction, or control of the affairs of the corporate Defendants, and while acting within the course and scope of their employment.

<u>**JURISDICTION AND VENUE**</u>

12.     This Court has subject matter jurisdiction pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d).  The aggregated claims of the individual Class Members exceed the sum or value of $5,000,000, exclusive of interest and costs; there are more than 100 putative class members defined below; and there are numerous members of the proposed class who are citizens of a state different from Defendants.

13.     This Court has personal jurisdiction over all Defendants because Defendants conduct substantial business in the District and because a substantial part of the acts and omissions complained of occurred in the District.

14.     Venue as to Defendants is proper in this judicial district under 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claims occurred in this District.  All Defendants are authorized to conduct business in this

District, have intentionally availed themselves of the laws and markets within this District, do substantial business in this District, and are subject to personal jurisdiction in this District.

### GENERAL ALLEGATIONS

15.     Bread Financial provides "tech-forward" payment and lending solutions to customers in North America. It offers credit card and other financing services, including risk management solutions, account origination, and funding services for approximately 130 private label and co-brand credit card programs, as well as through Comenity-branded general purpose cash-back credit.

16.     Bread Financial, through its subsidiary, Comenity Bank, issues and manages approximately 130 private-label and co-branded credit card programs for partners including the NFL, Kay Jewelers, Ulta Beauty, Hot Topic, Sephora, and Victoria's Secret.

17.     Comenity purports to offer "exclusive offers and benefits" to cardholders.

18.     Comenity charges accountholders fees such as late payment fees and penalties, ATM withdrawal fees, balance transfer fees, and transaction fees.

19.     On or about June 23, 2022, Comenity's system experienced a customer service outage, resulting in cardholders' inability to access their accounts, obtain information, or make payments.

20.     Defendants later announced on June 27, 2022 that their sites were "currently undergoing a planned system update that has taken longer than expected"[1] and they blamed the disruption in service on "a complex, planned system update" that "caused [its] service channels and other capabilities to go out from time to time."[2] Defendants did not notify customers in advance that of this "planned system

---

[1] *See* https://twitter.com/askcomenity/status/1541501495140573189 (last visited July 25, 2022).
[2] *See Frequently Asked Questions for Customers*,
https://d.comenity.net/common/images/system_upgrade_outage_faqs.pdf (last visited July 25, 2022).

update" or of the fact that customers may be without access to their accounts for days or weeks on end.

21.    On June 30, the CFPB reported that it had been receiving complaints about customer support and service issues at Comenity Bank, and it encouraged affected consumers to continue sharing their stories by submitting online complaints to the CFPB website.



22.    Despite Defendants' public assurances that the system outage would be short-lived, the loss of access to accounts has persisted for several weeks, with many cardholders still unable to access their accounts as of the filing of this Complaint, and the deadline for their credit card payments long overdue.

23.    In an effort to quell consumer complaints, Defendants offered to "waiv[e] late fees for customers whose payment due date fell on or between June 27-July 2" and assured customers that the late fee waiver would continue in tandem

with the outage.[3] They also attempted to reassure customers that the inability to make a payment would not affect credit scores, and encouraged customers to make a payment by using the online "EasyPay" system.

24.     However, customer complaints document the issues that cardholders faced when attempting to make payments using this EasyPay system or over the phone, with customers complaining that EasyPay is "not functional" and "no one is answering [Comenity's] customer service line."[4] This impacted cardholders' abilities to make timely payments, which caused them to incur charges and impacted their credit scores.

25.     Several days later, on July 4, Defendants announced that access had been restored and that cardholders could access their accounts online and make payments. Yet online cardholder complaints tell a different story, with system outages continuing to affect their ability to access online accounts, make payments and/or use their credit cards.

26.     The next day, on July 5, Comenity admitted that it continued to experience disruption despite its statement to cardholders that its system had restored access just one day prior.

27.     On July 18, Comenity took to Twitter to announce that it continued to be impacted by intermittent outage issues. Comenity notably did not announce any extension to its late fee waiver or any other accommodations it would offer customers who had been impacted by the system outage.

---

[3] Erica Thompson, *Bread Financial credit card company wrestles with system outage*, The Columbus Dispatch (July 2, 2022), available: https://www.dispatch.com/story/business/2022/07/01/bread-financial-comenity-bank-waives-credit-card-fees-system-outage/7780954001/.

[4] *See, e.g.* https://twitter.com/przmaticpanoply/status/1546513599224373248 (last visited July 25, 2022); https://twitter.com/JoeyJ_mpls/status/1546473009468379147 (last visited July 25, 2022).



28.    During the time the system has been down, Comenity account holders were unable to pay their bills—even through the EasyPay and telephone channels that Comenity instructed them to use, resulting in late fees being accessed. Customers took to the internet, and particularly social media, to voice their complaints. Below are just a handful of complaints that demonstrate the challenges customers faced in accessing their accounts, making payments, and incurring late fees as a result of Comenity's outage:[5]



---

[5] *See* https://www.facebook.com/askcomenity/, post on July 9, 2022 (last visited July 25, 2022).



**Denise Fink ▶ Comenity**
1d · 🌐

My credit score has gone down 200 points this month because COMENITY Bank has put incorrect information in all the credit bureaus!!! I have tried to call and go online and have had no luck reaching anyone! The automated system just wants me to pay the bill I do not owe! Meanwhile my credit score keeps going down every day I do not pay! Can a person from COMENITY Bank please contact me to correct this situation???? PLEASE!!!?

😠👍 3                                                    6 Comments

👍 Like                    💬 Comment                    ↗ Share



**FIREFLY-Joey Jo Jo** @JoeyJ_mpls · 7h                        …

@BreadFinancial @askcomenity @express **comenity** is still down. Easypay doesn't work - the site crashes every time. I was promised by multiple agents that I would not be charged a late fee. My account was charged with a late fee. This needs to be fixed now.

💬 1                  🔁                  ♡ 1                  ↑

LETTER...NO EXCUSE NOT TO POST THE PAYMENT. After eight days, payment has yet to post to my account. Have tried everything to try to get around the chaos. Discussed with rep July 5th and told to "WAIT AND SEE" if it posts by the July 7th due date (expect rep already knew it was never going to post). After midnight last week, got in to at least make a $35 minimum payment before due date. Now account will be overpaid plus finance charge if the check I sent ever posts.

**Kim Armstrong** Comenity I've been trying to make a payment since JUNE 22nd. Your "planned system outage" is taking a month to fix?? Makes zero sense. Oh but you can send me a "statement" with my balance due and due date?? Wave my late fee and give me a WORKING solution to make my payment. Easy pay and customer service are inaccessible, so DO NOT suggest that. FIX YOUR WEBSITE ALREADY!!

1d                                                                        👍 3



29.     As a direct and proximate result of the actions described above, Plaintiffs and members of the proposed classes have been damaged.

**PLAINTIFFS' SPECIFIC FACTS**

**Plaintiff Susan Crisp**

30.     Plaintiff Susan Crisp is a resident of Crossville, Tennessee.

31.     Plaintiff Susan Crisp holds a Goody's Credit Card, issued by Comenity Bank.

32.     On or around July 13, 2022, Ms. Crisp attempted to make a payment on her Goody's Credit Card. When she attempted to log in to her account online, the Comenity website delivered multiple, inconsistent messages. These messages included that she could not log in due to "technical errors", the website "could not access [her] account", and "[her] account has been closed."

33.     The same day, Ms. Crisp contacted Comenity by phone in an attempt to make a payment to her Goody's account. She was unable to reach anyone who could assist her and instead an automated message notified her that no associates were available to help her and instructed her to call back later.

34.     The following day, Ms. Crisp received an email notification about her Goody's credit card bill stating that she owed them $58 for her monthly bill, even though her monthly bill payment was originally only $30. Ms. Crisp realized that she had been charged a $28 late fee as result of Comenity's failure to timely post her payment onto her account. When Ms. Crisp tried to sign onto her account on Comenity Bank's website as recently as the date of this filing, she was informed that her account has been closed, despite not having initiated any closure of the account herself.

35.     As of the date of this Complaint, Ms. Crisp still does not have access to her credit card accounts to make payments due to her account being closed.

36.     Because of her inability to access her online account, Plaintiff Susan Crisp was unable to make timely credit card payments on her Goody's credit card account. She was notified of incurred late fees to date of $28 related to the system outage which left her unable to make timely payments to her Goody's account. Because Ms. Crisp has yet to be able to pay her credit cards, her credit score, credit report, and credit worthiness have been negatively impacted.

**Plaintiff Ashley Sacchitella**

37. Plaintiff Ashley Sacchitella holds a Victoria's Secret Credit Card and Hot Topic Guest List Credit Card.

38. On or around July 1, 2022, Ms. Sacchitella attempted to make early payments on her Victoria's Secret and Hot Topic credit cards. Her payments were due on July 4, 2022. When she attempted to log in to her account online, the Comenity website delivered multiple, inconsistent messages. These messages included that she could not log in due to "technical errors", the website "could not access [her] account", and "[her] account has been closed."

39. The same day, Ms. Sacchitella contacted Comenity by phone in an attempt to make a payment. She was unable to reach anyone who could assist her, and instead recieved an automated message notifying her that no associates were available to help her and instructed her to call back later.

40. On and after July 1, 2022, Ms. Sacchitella sent several Twitter messages to Comenity requesting assistance accessing her account and to make necessary credit card payments.

41. Comenity has sent Ms. Sacchitella multiple emails stating that her statement is available online. Upon clicking on these emails to access the online statement, however, she has experienced "technical errors" and "glitches".

42. As of the date of this Complaint, Ms. Sacchitella still does not have access to her credit card accounts to make payments.

43. Because of her inability to access her online account, Plaintiff Ashley Sacchitella was unable to make timely credit card payments. Because the payment date for her account has passed, and her payment dates fell outside the window where late fees would be waived, she has incurred late fees ranging from $35 to $40 per late payment. Because Ms. Sacchitella has yet to be able to pay her credit cards, her credit score, credit report, and credit worthiness have been negatively impacted.

**Plaintiff Catherine Weeks**

44.     Plaintiff Catherine Weeks is a resident of Salt Lake City, Utah.

45.     Ms. Weeks holds an Ulta Ultimate Rewards credit card, issued by Comenity.

46.     On or around June 28 and July 8, Ms. Weeks attempted to make payments totaling $1,500 on her Ulta credit card by using the bill pay feature through her credit union.

47.     A few days later, Ms. Weeks observed that the payments were withdrawn from her bank account, but had not posted to her Ulta credit card account. Ms. Weeks tried to contact Comenity by phone in an attempt to confirm payment. She was unable to reach anyone who could assist her and was disconnected after waiting on hold for long periods of time.

48.     Ms. Weeks provided proof that the $1,500 payments were withdrawn from her bank and sent to Defendants, but Defendants' representatives contend that they never received the payments, despite the proof Ms. Weeks provided to them.

49.     Ms. Weeks has not received notification that her $1,500 payments from her bank have actually been added to her credit card account.

50.     As of the date of this Complaint, Ms. Weeks still does not have reliable access to her Ulta credit card account to make payments. Often, when she attempts log in to her account, the following message is displayed: "we apologize for the inconvenience but you cannot access your account at this time."

51.     Because Ms. Weeks has yet to receive confirmation that her payment was received and believes her credit score, credit report, and credit worthiness have been negatively impacted, and that she will be assessed a late fee once she gains access to her account.

## CLASS ACTION ALLEGATIONS

52.     Plaintiffs bring this suit as a class action on behalf of themselves and on behalf of all others similarly situated pursuant to Federal Rule of Civil Procedure 23.   This action satisfies the numerosity, commonality, typicality, adequacy, predominance and superiority requirements of the provisions of Rule 23.

53.     Plaintiffs seeks to represent the following "Class":

> All consumers in the United States who held an active Store-brand Credit Card on or after June 23, 2022 and experienced a disruption in service to their accounts caused by Defendants' system outage.

54.     In the alternative to the Class, Plaintiffs seek to represent the following state specific classes:

> **Tennessee Class**
> All consumers in Tennessee who held an active Store-brand Credit Card on or after June 23, 2022 and experienced a disruption in service to their accounts caused by Defendants' system outage.
>
> **California Class**
> All consumers in California who held an active Store-brand Credit Card on or after June 23, 2022 and experienced a disruption in service to their accounts caused by Defendants' system outage.
>
> **Utah Class**
> All consumers in Utah who held an active Store-brand Credit Card on or after June 23, 2022 and experienced a disruption in service to their accounts caused by Defendants' system outage.

55.     ***Numerosity:***  Members of the Class are so numerous that joinder of all members is impracticable. While the exact number of Class members remains unknown at this time, upon information and belief, there are hundreds of thousands of putative Class members throughout the United States who are generally ascertainable by appropriate discovery.

56.    **Commonality:** This action involves common questions of law and fact, which predominate over any questions affecting individual Class members.  These common legal and factual questions include, but are not limited to, the following:

    a.  whether Defendants owed duties to Plaintiffs and the putative Class, the scope of those duties, and if they breached those duties;

    b.  whether Defendants' conduct was unfair or unlawful;

    c.  whether Defendants breached their contracts with Plaintiffs and the proposed Class;

    d.  whether Plaintiffs and the Class have sustained damages as a result of Defendants' conduct alleged herein and, if so, what is the proper measure of such damages;

    e.  whether Plaintiffs and the Class are entitled to restitution and, if so, what is the proper measure of restitution; and,

    f.  whether Plaintiffs and the Class are entitled to declaratory and injunctive relief.

57.    **Typicality**: Plaintiffs' claims are typical of those of the other Class members because, *inter alia*, all members of the Class were injured through the common misconduct described above and were subject to Defendants' unfair and unlawful conduct. Plaintiffs are advancing the same claims and legal theories on behalf of themselves and all members of the Class.

58.    **Adequacy of Representation:** Plaintiffs will fairly and adequately represent and protect the interests of the Class in that they have no disabling conflicts of interest that would be antagonistic to those of the other members of the Class. Plaintiffs seek no relief that is antagonistic or adverse to the members of the Class and the infringement of the rights and the damages they have suffered are typical of other Class members. Plaintiffs have retained counsel experienced in complex consumer class action litigation, and Plaintiffs intend to prosecute this action vigorously.

59. *Superiority:*  The class litigation is an appropriate method for fair and efficient adjudication of the claims involved. Class action treatment is superior to all other available methods for the fair and efficient adjudication of the controversy alleged herein; it will permit a large number of class members to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of evidence, effort and expense that hundreds of individual actions would require. Class action treatment will permit the adjudication of relatively modest claims by certain class members, who could not individually afford to litigate a complex claim against large corporate defendants. Further, even for those class members who could afford to litigate such a claim, it would still be economically impractical.

60. The nature of this action and the nature of laws available to Plaintiffs and the Class make the use of the class action device a particularly efficient and appropriate procedure to afford relief to Plaintiffs and the Class for the wrongs alleged because Defendants would necessarily gain an unconscionable advantage since they would be able to exploit and overwhelm the limited resources of each individual Class member with superior financial and legal resources; the costs of individual suits could unreasonably consume the amounts that would be recovered; proof of a common course of conduct to which Plaintiffs were exposed is representative of that experienced by the Class and will establish the right of each member of the Class to recover on the cause of action alleged; and individual actions would create a risk of inconsistent results and would be unnecessary and duplicative of this litigation.

61. Plaintiffs reserve the right to modify or amend the definition of the proposed classes and to modify, amend or remove proposed subclasses, before the Court determines whether certification is appropriate and as the parties engage in discovery.

62.     The class action is superior to all other available methods for the fair and efficient adjudication of this controversy. Because of the number and nature of common questions of fact and law, multiple separate lawsuits would not serve the interest of judicial economy.

63.     Individual litigation of the claims of all Class members is economically unfeasible and procedurally impracticable.  While the aggregate damages sustained by the Class are likely in the millions of dollars, the individual damages incurred by each Member resulting from Defendants' wrongful conduct are too small to warrant the expense of individual suits.  The likelihood of individual Class Members prosecuting separate claims is remote, and even if every Class Member could afford individual litigation, the court system would be unduly burdened by individual litigation of such cases.  Individual Class Members do not have a significant interest in individually controlling the prosecution of separate actions, and the individualized litigation would also present the potential for varying, inconsistent, or contradictory judgments and would magnify the delay and expense to all parties and to the court system resulting from multiple trials of the same factual issues.  Plaintiffs know of no difficulty to be encountered in the management of this action that would preclude its maintenance as a class action.  A class action in this matter will avoid case management difficulties and provide multiple benefits, including efficiency, economy of scale, unitary adjudication with consistent results and equal protection of the rights of each Class Member, all by way of the comprehensive and efficient supervision of the litigation by a single court.

64.     Notice of a certified class action and of any result or resolution of the litigation can be provided to Class Members by first-class mail, email, or publication, or such other methods of notice as deemed appropriate by the Court.

65.     Plaintiffs do not anticipate any difficulty in the management of this litigation.

16

# FIRST CLAIM FOR RELIEF
## BREACH OF CONTRACT

(On Behalf of the Class or, Alternatively, the Tennessee, California, and Utah Classes, as to all Defendants)

66.     Plaintiffs incorporate by reference all preceding allegations as though fully set forth herein.

67.     Plaintiffs, and each member of the proposed Class, formed a contract with Defendants at the time they applied for a credit card.  The terms of that contract include the promises and affirmations of fact made by Defendants through their marketing materials and statements, as described above, which constitute express warranties and promises, became part of the basis of the bargain, and are part of a standardized contract between Plaintiffs and the members of the proposed Class on the one hand, and Defendants on the other.

68.     In exchange for Defendants' promise of safety and convenience, as well as access to the credit cards and accounts, Plaintiffs and Class members used their cards and paid fees and other charges for their credit card accounts.

69.     Plaintiffs and Class members gave consideration that was fair and reasonable, and have performed all conditions, covenants, and promises required to be performed.

70.     Defendants breached the terms of this contract, including their express warranties and promises, with Plaintiffs and the proposed Class by, *inter alia,* denying customers access to their funds and refusing to waive all late fees attributable to Defendants' customer service outage. Defendants' breach was material.

71.     As a result of Defendants' breach of its contract and warranties, Plaintiffs and the proposed Class have been damaged in an amount to be proven at trial.

## SECOND CLAIM FOR RELIEF
## CONVERSION

(On Behalf of the Class or, Alternatively, the Tennessee, California, and Utah Classes, as to all Defendants)

72.     Plaintiffs incorporate by reference all preceding allegations as though fully set forth herein.

73.     Plaintiffs, and each member of the Class, hold credit card accounts with Defendants from which Defendants have unilateral power to charge fees.

74.     Defendants knowingly and intentionally exercised control over their accounts and wrongfully charged monies belonging to Plaintiffs and Class members, freezing the credit cards and account access, and taking funds for their benefit.

75.     Because of the unlawful restraint imposed by Defendants, the rights of Plaintiffs and the Class members in their funds and credit cards were interfered with and their funds could not be used in the matter in which they desired.

76.     Defendants also unlawfully imposed fees upon Plaintiffs and the Class members in connection with these restraints and has refused to waive all fees attributable to Defendants' customer service outage.

77.     As a result of the foregoing actions of Defendants, Plaintiffs and the Class have been damaged in an amount to be proven at trial.

## THIRD CLAIM FOR RELIEF
## VIOLATION OF THE CALIFORNIA FALSE ADVERTISING ACT

(Cal. Bus. & Prof. Code §§ 17500 *et seq.*)

(On Behalf of the California Class as to all Defendants)

78.     Plaintiffs incorporate by reference all preceding allegations as though fully set forth herein.

79.     Pursuant to California Business and Professions Code § 17500 *et seq.*, it is unlawful to engage in in advertising "which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue

or misleading...or...to so make or disseminate or cause to be so made or disseminated any such statement as part of a plan or scheme with the intent not to sell that personal property or those services, professional or otherwise, so advertised at the price stated therein, or as so advertised."

80. The prohibition against false advertising established by California Business and Professions Code § 17500 *et seq.* extends to the use of false or misleading written statements.

81. Defendants misled consumers by making misrepresentations and untrue statements about consumers having regular access to their accounts and only being charged late fees under certain circumstances in order to solicit these transactions.

82. Defendants represented that credit card customers would have full access to the credit cards and online accounts. Defendants also represented that they would only charge late fees under certain circumstances, namely that the consumer was at fault for the lateness of the payment.

83. Despite the disruption in service continuing for weeks and despite customer complaints of losing full access to their accounts and being wrongfully charged late fees, Defendants continued to make false statements minimizing the extent and effects of the outage.

84. Defendant knew that their representations and omissions were untrue and misleading, and deliberately made the aforementioned representations and omissions in order to deceive reasonable consumers like Plaintiffs and other Class Members.

85. As a direct and proximate result of Defendants' misleading and false advertising, Plaintiffs and the other Class Members have suffered injury in fact and have lost money or property. Plaintiffs reasonably relied upon Defendants' representations, and were deprived of access to their accounts and credit cards for weeks, and been wrongfully charged late fees and other fees, and suffered harm to

their credit scores and therefore Plaintiffs and other Class Members have suffered injury in fact.

86.     The misleading and false advertising described herein presents a continuing threat to Plaintiffs and the Class Members in that Defendants persist and continue to engage in these practices, and will not cease doing so unless and until forced to do so by this Court.  Defendants' conduct will continue to cause irreparable injury to consumers unless enjoined or restrained.   Plaintiffs are entitled to preliminary and permanent injunctive relief ordering Defendants to cease their false advertising, as well as disgorgement and restitution to Plaintiffs and all Class Members of Defendants' revenues associated with their false advertising, or such portion of those revenues as the Court may find equitable.

**FOURTH CLAIM FOR RELIEF**

**VIOLATIONS OF THE CALIFORNIA UNFAIR**

**BUSINESS PRACTICES ACT**

(Cal. Bus. & Prof. Code §§ 17200 *et seq.*)

(On Behalf of the California Class as to all Defendants)

87.     Plaintiffs incorporate by reference all preceding allegations as though fully set forth herein.

88.     Actions for relief under the California Unfair Business Practices Act, Cal. Bus. & Prof. Code §§ 17200 *et seq*. ("UCL"), may be based on any business act or practice that is within the broad definition of the UCL.  Such violations of the UCL occur as a result of unlawful, unfair or fraudulent business acts and practices which cause or was likely to cause substantial injury. Furthermore, the "act or practice" aspect of the statutory definition of unfair competition covers any single act of misconduct, as well as ongoing misconduct.

89.     California Business & Professions Code § 17200 prohibits any "unfair ... business act or practice."  Defendants' acts, omissions, misrepresentations, and practices as alleged herein also constitute "unfair" business acts and practices

20

within the meaning of the UCL in that their conduct is substantially injurious to consumers, offends public policy, and is immoral, unethical, oppressive, and unscrupulous as the gravity of the conduct outweighs any alleged benefits attributable to such conduct. There were reasonably available alternatives to further Defendants' legitimate business interests, other than the conduct described herein. Plaintiff reserves the right to allege further conduct that constitutes other unfair business acts or practices. Such conduct is ongoing and continues to this date.

90.    In order to satisfy the "unfair" prong of the UCL, a consumer must show that the injury: (1) is substantial; (2) is not outweighed by any countervailing benefits to consumers or competition; and, (3) is not one that consumers themselves could reasonably have avoided.

91.    Here, Defendants' conduct has caused and continues to cause substantial injury to Plaintiffs and members of the Class. Plaintiffs and members of the Class have suffered injury in fact due to Defendants' omissions misrepresentations regarding the security and stability of their accounts and their continued access to their accounts and credit cards. Thus, Defendants' conduct has caused substantial injury to Plaintiffs and the members of the Class.

92.    Moreover, Defendants' conduct as alleged herein solely benefits themselves while providing no benefit of any kind to any consumer. Such deception utilized by Defendants convinced Plaintiffs and members of the Class that they would have constant access to their credit cards and accounts  and that they would only be charged late fees under certain circumstances. In fact, this was not the case for Plaintiffs and other putative class members, Defendants unfairly profited. Thus, the injury suffered by Plaintiffs and the members of the Class is not outweighed by any countervailing benefits to consumers.

93.    Finally, the injury suffered by Plaintiffs and members of the Class is not an injury that these consumers could reasonably have avoided. Defendants failed to take reasonable steps to correct the damages that Plaintiffs and class members

21

were suffering, failed to provide access to their accounts and credit cards, and wrongfully charged fees. As such, Defendants took advantage of their position of perceived power in order to deceive Plaintiffs and the Class members to apply for and use their credit cards. Therefore, the injury suffered by Plaintiffs and members of the Class is not an injury that these consumers could reasonably have avoided.

94. Thus, Defendants' conduct has violated the "unfair" prong of California Business & Professions Code § 17200.

95. California Business and Professions Code § 17200 *et seq.* prohibits "any unlawful…business act or practice."

96. Defendants used false advertising, marketing, and misrepresentations to induce Plaintiffs and Class Members to apply for and use their credit cards on the premise that they would have continued access, in violation of California Business and Professions Code § 17500 *et seq.* Defendants then falsely misrepresented, omitted, and minimized the nature of the outage and that it would refund any late fees when it has not. During the outage, Plaintiffs and Class members are not able to use their credit cards or prevent Defendants from charging them fees. Defendants' conduct therefore caused and continues to cause economic harm to Plaintiffs and Class Members.

97. These representations by Defendants are therefore an "unlawful" business practice or act under Business and Professions Code § 17200 *et seq.*

98. Defendants, thus, have engaged in unlawful and unfair business acts entitling Plaintiffs and Class Members to judgment and equitable relief against Defendants. Further, pursuant to Business and Professions Code § 17203, Plaintiffs and Class Members seek an order requiring Defendants to immediately cease such acts of unlawful and unfair business practices and requiring Defendants to correct their actions.

## FIFTH CLAIM FOR RELIEF

## VIOLATIONS OF THE UTAH CONSUMER SALES PRACTICES ACT

(On Behalf of the Utah Class as to all Defendants)

99.   Plaintiffs incorporate by reference all preceding allegations as though fully set forth herein.

100.   Here, Defendants' conduct has caused and continues to cause substantial injury to Plaintiffs and members of the Class.  Plaintiffs and members of the Class have suffered injury in fact due to Defendants' omissions misrepresentations regarding the security and stability of their accounts and their continued access to their accounts and credit cards. Thus, Defendants' conduct has caused substantial injury to Plaintiffs and the members of the Class.

101.   Moreover, Defendants' conduct as alleged herein solely benefits themselves while providing no benefit of any kind to any consumer.  Such deception utilized by Defendants convinced Plaintiffs and members of the Class that they would have constant access to their credit cards and accounts  and that they would only be charged late fees under certain circumstances.  In fact, this was not the case for Plaintiffs and other putative class members, Defendants unfairly profited.  Thus, the injury suffered by Plaintiffs and the members of the Class is not outweighed by any countervailing benefits to consumers.

102.   Finally, the injury suffered by Plaintiffs and members of the Class is not an injury that these consumers could reasonably have avoided.  Defendants failed to take reasonable steps to correct the damages that Plaintiffs and class members were suffering, failed to provide access to their accounts and credit cards, and wrongfully charged fees. As such, Defendants took advantage of their position of perceived power in order to deceive Plaintiffs and the Class members to apply for and use their credit cards.  Therefore, the injury suffered by Plaintiffs and members of the Class is not an injury that these consumers could reasonably have avoided.

103. Therefore, Plaintiff and the other Utah Class members are entitled to equitable relief under the Utah Consumer Sales Practices Act.

## SIXTH CLAIM FOR RELIEF

### NEGLIGENCE

(On Behalf of the Class or, Alternatively, the Tennessee, California, and Utah Classes, as to all Defendants)

104. Plaintiffs incorporate by reference all preceding allegations as though fully set forth herein.

105. Defendants owed duties to Plaintiffs and the proposed Class as account holders and paying customers to use reasonable care to protect and provide access to the accounts and credit cards. Defendants also owed duties to Plaintiffs and the proposed Class not to wrongfully charge late fees or take actions that could harm Plaintiffs and proposed Class members' credit scores and histories.

106. Defendants breached their duties to Plaintiffs and the proposed Class by failing to provide customers access to their accounts and use of their credit cards for a prolonged period of time causing hardship to the Plaintiffs and the proposed classes.

107. Defendants breached their duties to Plaintiffs and the proposed Class by wrongly charging late fees relating to the outage which in many cases further resulted in harming their credit scores.

108. Defendants failed to use reasonable care in preparing and conducting the system update causing the extended outage and in communicating the information about update and outage. Defendants further failed to use reasonable care in not taking steps to stop charging late fees.

109. Based upon past experiences and system updates, and knowledge of their own systems, Defendants should have anticipated potential problems, been adequately prepared to resolve them quickly, and properly advised account holders of the possibility of a prolonged service disruption.

110.   As a direct and proximate result of Defendants' negligence, Plaintiffs and the proposed Class were damaged in an amount to be proven at trial.

## SEVENTH CLAIM FOR RELIEF
## BREACH OF CONTRACTS TO WHICH PLAINTIFFS AND CLASS MEMBERS WERE INTENDED THIRD-PARTY BENEFICIARIES
(On Behalf of the Class, or, Alternatively, the Tennessee, California, and Utah Classes as to all Defendants)

111.   Plaintiffs incorporate all foregoing substantive allegations as if fully set forth herein.

112.   Upon information and belief, Plaintiffs and class members are intended third-party beneficiaries of contracts entered into between and among Defendants and various entities including, without limitation, contracts between Comenity Bank, Bread Financial and their merchant customers to issue store branded cards.

113.   Upon further information and belief, these contracts require Defendants to have a system whereby consumers can reasonably access and pay their credit card balances.

114.   Plaintiff and the class members are intended third party beneficiaries of these contracts. Under the circumstances, recognition of a right to performance by Plaintiff and the class members is appropriate to effectuate the intentions of the parties to these contracts.

115. Defendants breached these agreements, which directly and/or proximately caused Plaintiff and the class members to suffer substantial damages.

116. Accordingly, Plaintiffs and class members who have been injured are entitled to damages, restitution, and other relief in an amount to be proven at trial.

## EIGHTH CLAIM FOR RELIEF
### UNJUST ENRICHMENT

(On Behalf of the Class or, Alternatively, the Tennessee, California, and Utah Classes as to all Defendants)

117. Plaintiffs incorporate by reference all preceding allegations as though fully set forth herein. This count is plead in the alternative to the contract-based claims.

118. Plaintiffs and the proposed Class have conferred a benefit upon Defendants by applying for and making purchases with their credit cards, which did not perform as promised and/or did not have the attributes and benefits promised by Defendants.

119. By their unfair, misleading and unlawful conduct alleged herein, Defendants have unjustly received and retained benefits at the expense of Plaintiffs and the proposed Class, including funds that Plaintiffs and the proposed Class paid to Defendants it late fees, application fees, and other account fees.

120. During the time Plaintiffs and the proposed Class have not had access to their accounts and their credit cards, Defendants have continued to wrongfully charge late fees as well as other account fees.

121. Under principles of equity and good conscience, Defendants should not be permitted to retain money belonging to Plaintiffs and the proposed Class that they unjustly received as result of its unfair, misleading and unlawful conduct alleged herein without providing compensation to Plaintiffs and the proposed Class.

122.   Plaintiffs and the proposed Class have suffered financial loss as a direct result of Defendants' conduct.

123.   Plaintiffs and Class Members are entitled to restitution of, disgorgement of, and/or the imposition of a constructive trust upon all profits, benefits and other compensation obtained by Defendants, and for such other relief that this Court deems proper, as a result of their unfair, misleading and unlawful conduct.

## PRAYER FOR RELIEF

WHEREFORE, as a result of the foregoing, Plaintiffs, on behalf of themselves and all others similarly situated, pray for relief as follows:

A. Declaring this action to be a class action, certifying the proposed Classes, appointing Plaintiffs as class representatives and appointing Plaintiff' counsel as class counsel;

B. An order that Defendants are permanently enjoined from their improper conduct and practices as alleged, and requiring the issuance of full refunds of any late fees incurred as a result of the system outage described herein;

C. A judgment awarding Plaintiffs and Class members restitution, including, without limitation, restitutionary disgorgement of all profits and unjust enrichment that Defendants obtained as a result of their unlawful, unfair, and fraudulent business practices and conduct;

D. A judgment awarding Plaintiffs and Class members actual damages;

E. Pre-judgment and post-judgment interest;

F. Attorneys' fees, expenses, and the costs of this action;

G. All other and further relief as this Court deems necessary, just, and proper.

## JURY DEMAND

Plaintiffs demand a trial by jury on all issues so triable.


DATED:  July 25, 2022.

BY:   */s/ Daniel R. Karon*

Daniel R. Karon, Trial Attorney
**KARON LLC**
Daniel R. Karon
700 W. St. Clair Avenue, Suite 200
Cleveland, OH 44113

Joseph G. Sauder*
Joseph B. Kenney*
**SAUDER SCHELKOPF LLC**
1109 Lancaster Avenue
Berwyn, PA 19312
Telephone: (888) 711-9975
Email: jgs@sstriallawyers.com
       jbk@sstriallawyers.com

Benjamin F. Johns*
Samantha E. Holbrook*
**CHIMICLES SCHWARTZ KRINER &**
**DONALDSON-SMITH LLP**
361 W. Lancaster Avenue
Haverford, PA 19041
Telephone: (610) 642-8500
Email:  BFJ@chimicles.com
       SEH@chimicles.com

*Attorneys for Plaintiffs and the
Proposed Class*

*\* Pro Hac Vice application to be
submitted*